**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | | |
|---|---|---|
| MARY HEATHER MCAFEE, *et al.*, *on behalf of themselves and all similarly situated individuals*, | ) ) ) ) | |
| *Plaintiffs*, | ) ) | Case No. 3:23-cv-00439-RCY |
| v. | ) ) | |
| MERIDIANLINK, INC., | ) ) | |
| *Defendant*. | ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED**
**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Plaintiffs Mary Heather McAfee, Zaher Murray, and George Wright ("Plaintiffs") filed this Class Action against Defendant MeridianLink, Inc. ("MeridianLink" or "Defendant"), who creates and sells "tri-merge" credit reports using information from all three National Consumer Reporting Agencies ("NCRAs"),[1] which are then resold by MeridianLink's customers to mortgage lenders. Plaintiffs alleged that MeridianLink negligently and willfully violated the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA") by failing to follow reasonable procedures to assure maximum possible accuracy of the consumer reports it furnishes. Specifically, Plaintiffs alleged that MeridianLink inaccurately included in Plaintiffs' consumer reports a notation that each was "deceased" when in fact they are alive. Plaintiffs made this claim under 15 U.S.C. § 1681e(b) on behalf of a class of similarly situated consumers. MeridianLink denied each of Plaintiffs' allegations and asserted numerous defenses, including that it is not subject to the FCRA and that Plaintiffs could not bring their claims as class claims.

---

[1] The NCRAs are Experian Information Solutions, Inc., Equifax, Inc., and Trans Union, LLC. (Settlement Agreement § 2.16.)

After months of litigation and multiple rounds of negotiations before the Honorable Mark R. Colombell, Plaintiffs and MeridianLink entered into a Settlement Agreement and Release ("Settlement Agreement"), which the parties have attached to the Motion for Preliminary Approval. The proposed settlement creates a Rule 23(b)(2) Settlement Class that will receive significant injunctive relief under the terms of the Agreement, while preserving any claims each Class Member may have against MeridianLink for monetary damages, including punitive damages and attorney's fees, under the FCRA. (Settlement Agreement §§ 4.6, 6.3.) Specifically, the Settlement requires MeridianLink to address the very issue raised in Plaintiffs' claims by altering its tri-merge reporting software such that a consumer is not reported as deceased whenever only one or two of the NCRAs include a deceased notation in the consumer's credit file. This will substantially reduce instances in which MeridianLink falsely reports a consumer as deceased, which was the precise cause of the harm to Plaintiffs and the Settlement Class in this case.

Under Federal Rule of Civil Procedure 23, Plaintiffs and MeridianLink now seek preliminary approval of the proposed class action settlement. The parties request that the Court preliminarily certify the proposed class and the proposed Rule 23(b)(2) settlement by entering the proposed Preliminary Approval Order. A final motion and proposed order supporting the fairness of the proposed class action settlement will be submitted: (1) after implementation of the Notice Plan; and (2) before the Court's Final Approval Hearing.

For the reasons explained below, the proposed class action settlement is reasonable, fair, and adequate, and the Court should preliminarily approve it.

## I. SETTLEMENT TERMS

### a. *The Settlement Class*

Under the Settlement Agreement, the parties agreed to resolve the claims of a nationwide Rule 23(b)(2) class ("Settlement Class") defined as:

All natural persons who were the subject: (1) of a consumer report generated through the Defendants' software or otherwise allegedly furnished, assembled, or resold to a third party within the five years before the filing date of the Complaint; (2) where the report or data derived for purposes of populating the report contained a status indicating that the consumer was deceased from the NCRAs; (3) where at least one other NCRA's report/data did not contain a deceased notation; and (4) where the consumer was not deceased at the time the report was issued.

(Settlement Agreement § 2.26.)

### b. *Injunctive Relief to the Settlement Class*

MeridianLink is a consumer reporting agency that obtains consumers' credit reports from each of the three NCRAs, assembles that information into a single report and then, for a fee, sends that report to another consumer reporting agency (a "Customer CRA") who then resells the report to mortgage creditors. Relevant to this case, MeridianLink provides these so-called "tri-merge" reports through its software program, Mortgage Credit Link ("MCL"). Plaintiffs pursued this litigation to address the practice by MeridianLink to report consumers as deceased when only one or two of the NCRAs provided a deceased notation, but not others, which significantly increased the instances in which MeridianLink—and, in turn, the Customer CRAs who resold its reports—falsely reported a consumer as deceased. By doing so, MeridianLink caused significant harm to consumers, including preventing them from receiving mortgage credit.

As a result of the Settlement Agreement, MeridianLink has agreed to address the issues with its MCL software that caused the inaccurate deceased reporting that harmed Plaintiffs and the Settlement Class Members. Specifically, MeridianLink has agreed to the following actions depending on the type of report requested by its Customer CRAs through the MCL software.

First, for any tri-merge report provided by MeridianLink through the MCL software for which a Customer CRA has elected to suppress data—i.e., not to receive the consumer's credit information—from NCRAs indicating that the consumer is deceased and fewer than all three of the NCRAs report such an indicator, Meridian Link will provide the Customer CRA with the

option to add its own clarifying text alert in a report line/section associated with the particular NCRA reporting said indicator or will, as a default, provide the following message for the NCRA reporting said indicator in lieu of simply stating that the consumer is deceased:

> *Unable to deliver report. Please confirm consumer personal information used in the application and contact [customer CRA] for more information about how to reorder report.*

(Settlement Agreement § 4.6.a.) This message will ensure that those Customer CRAs who do not receive a consumer's full credit file, and any purchasers of the Customer CRAs' resold reports, do not automatically receive a report that the consumer is deceased, which often results in the denial of mortgage credit, but are instead directed to confirm the consumer's personal information and contact the Customer CRA about reordering the subject NCRA's report.

Second, if instead the Customer CRA has elected to include the consumer's credit data from NCRAs with a deceased indicator, but only one of the NCRAs provides such an indicator, MeridianLink will pass through to the Customer CRA the text alert from that NCRA reporting the consumer as deceased. (Settlement Agreement § 4.6.b.) In other words, the Customer CRA and any ultimate recipient of the resold report will continue to receive the consumer's full credit file from all three NCRAs, which will still allow the consumer to obtain mortgage credit. Indeed, by receiving all credit information, the mortgage creditor would be able to see that the consumer is not deceased despite the text alert from one of the NCRAs stating otherwise.

Finally, MeridianLink has agreed to provide for all MCL reports the following default statement that the Customer CRA can change:

> This report contains credit information provided by the three national credit bureaus, Equifax (EFX), Experian (XPN), and TransUnion (TUC). If, upon review of the information contained within this merged credit report, you believe that any information is inaccurate or incomplete, please contact [customer CRA].

(Settlement Agreement § 4.6.c.)  As with the other default message, this will help ensure that creditors purchasing resold MeridianLink reports are aware that inaccuracies are possible and that they should follow up with the Customer CRA reselling the report if they notice any such inaccuracies, such as the reporting of the consumer as deceased by only some of the NCRAs.

In total, this injunctive relief significantly reduces the instances in which those like Plaintiffs and others in the same position will be reported as deceased by MeridianLink.  Instead, creditors seeking information on a consumer whose file with only one or two of the NCRAs includes a deceased indicator will either (a) be informed that the file cannot be provided from the NCRA reporting the consumer as deceased (as opposed to being told that the consumer is in fact deceased), or (b) receive the full credit file from the NCRAs for that consumer, which would show ongoing credit activity that contradicts any deceased indicator.  And the agreed relief will further ensure that all those viewing a MCL tri-merge report are aware of possible inaccuracies and how to address them.

### c.   *Class Action Fairness Notice*

MeridianLink will provide notice of the proposed settlement under the Class Action Fairness Act of 2005, 28 U.S.C. § 1715 ("CAFA").  The CAFA Notice will be sent to the Attorney General of the United States and to the attorneys general of all states and the District of Columbia and all U.S. territories.  (Settlement Agreement § 4.5.)

### d.   *Attorneys' Fees, Costs, and Service Awards*

Class Counsel will apply for attorneys' fees and costs in an amount approved by the Court, but not to exceed $700,000.  (*Id.* § 4.7.1.)  Plaintiffs McAfee and Wright also will apply for a service award of $5,000 each for their role as class representatives to compensate them for their efforts in prosecuting this case including, but not limited to, retaining counsel and staying apprised of and participating in settlement negotiations.  (*Id.* § 4.7.2.)

### e. *Release of Claims*

In return for the injunctive relief described above, Plaintiffs and the Settlement Class Members will agree to a limited waiver of the right to bring a class action against MeridianLink and related parties for the deceased reporting at issue in this litigation. (*Id.* § 6.1.) Importantly, the Settlement Agreement specifically reserves the right to bring individual claims against MeridianLink and the other Released Parties for damages, including punitive damages, under the FCRA or any state equivalent statutes, so long as they are individual claims. (*Id.* § 6.3.) Class Members will also still be allowed to use the FCRA's important fee-shifting provision when bringing their individual claims, allowing them to select qualified counsel to represent them. (*Id.*)

### f. *Notice Plan*

Although class notice is not required for a class certified under Rule 23(b)(2), the Settlement Agreement has adopted a Notice Plan that follows the notice plans used in other (b)(2) class cases in this District. At a minimum, the Notice Plan will include the following:

1. As soon as practicable following preliminary approval, the court-appointed Settlement Administrator, who has extensive experience in administering class action settlements, will create a Class Settlement Website which shall post important settlement documents, such as the Settlement Agreement and the Court's Preliminary Approval Order, as well as a description of the Injunctive Relief to be provided and a copy of the Injunctive Relief Order. The Website shall further contain a frequently asked questions page, procedural information regarding the right to file an objection to the settlement, the approval process, and details on the final approval hearing.

2.  The Settlement Website shall also contain the Internet Notice attached to this Memorandum as Exhibit 1, which explains the lawsuit and the settlement terms in both English and Spanish.

3.  The Settlement Administrator will purchase banner advertisements on appropriate websites that will take potential Settlement Class Members to the Class Settlement Website if they click on the banner advertisements.

4.  Finally, the Settlement Administrator will create and maintain a toll-free number that provides pre-recorded information on the Settlement in both English and Spanish and directs callers to the Class Settlement Website.

(Settlement Agreement § 4.4.)  MeridianLink will be responsible for the costs of this Notice Plan. (*Id.* § 4.4.7.)  As this is a Rule 23(b)(2) class, there will be no right to opt-out of the Settlement, though Settlement Class Members may still object to the Settlement Agreement.

## II.   ARGUMENT

### a.   *Certification Standard*

Courts within the Fourth Circuit favor resolution of litigation before trial.  *See, e.g.*, *S.C. Nat'l Bank v. Stone*, 749 F. Supp. 1419, 1423 (D.S.C. 1990) ("The voluntary resolution of litigation through settlement is strongly favored by the courts." (citing *Williams v. First Nat'l Bank*, 216 U.S. 582 (1910))).  Settlement spares the litigants the uncertainty, delay, and expense of a trial and appeals while reducing the burden on judicial resources.  As the court observed in *Stone*:

> In the class action context in particular, there is an overriding public interest in favor of settlement. Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strains such litigation imposes upon already scarce judicial resources.

749 F. Supp. at 1423 (quoting *Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 313 (7th Cir. 1980)).

Rule 23 permits courts to preliminarily certify a class to carry out a settlement of the case. *In re*

*Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liability Litig.*, 55 F.3d 768, 793–94 (3d Cir. 1995) (collecting cases). A court may grant preliminary approval of a class action where the proposed class satisfies the four prerequisites of Rule 23(a) (*i.e.*, numerosity, commonality, typicality, and adequacy of representation), as well as one of the three subsections of Rule 23(b). *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997). If the Court determines that a settlement class should be certified, it then should follow a three-step process before granting final approval of a proposed settlement. *Levell v. Monsanto Rsch. Corp.*, 191 F.R.D. 543 (S.D. Ohio 2000).

First, the Court should preliminarily approve the proposed settlement. *Id.* at 547. Second, class members must be given notice of the proposed settlement. *Id.* Third, a final fairness hearing must be held, after which the Court should decide whether the proposed settlement is fair, adequate, and reasonable to the class as a whole and consistent with the public interest. *Id.* This protects the class members' procedural due process rights and enables the Court to fulfill its role as the guardian for the class's interests. *Id.* Approval of a class action settlement is committed to the "sound discretion of the district courts to appraise the reasonableness of particular class-action settlements on a case-by-case basis, in light of the relevant circumstances." *In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 663 (E.D. Va. 2001). Additionally, "there is a strong initial presumption that the compromise is fair and reasonable." *Id.*

Rule 23 governs the certification of class actions. In considering a settlement at the preliminary approval stage, the first question for the Court is whether a settlement class satisfies Rule 23's requirements, and thus may be conditionally certified for settlement purposes. Under Rule 23(a), one or more members of a class may sue as representative parties on behalf of a class if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions

of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the class's interests.  Fed. R. Civ. P. 23(a).

Here, the parties have reached a proposed agreement on behalf of the Settlement Class, which should be certified.

### b.    The Settlement Class Meets the Certification Elements

#### i.    The Settlement Class satisfies Rule 23(a)

##### 1.    Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable."  There is no set minimum number of potential class members that fulfills the numerosity requirement.  *See Holsey v. Armour & Co.*, 743 F.2d 199, 217 (4th Cir. 1984).  But where the class numbers 25 or more, joinder is usually impracticable.  *Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967) (holding 18 class members sufficient).

The numerosity requirement is easily met here.  There are estimated to be many thousands of Settlement Class Members, including Plaintiffs.  Joinder of this many individuals is neither possible nor practical, so the first prong of the certification test has been met.  *See Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 425 (4th Cir. 2003).

##### 2.    Commonality

Rule 23(a)(2) requires that the court find that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  "Commonality is satisfied where there is one question of law or fact common to the class, and a class action will not be defeated solely because of some factual variances in individual grievances."  *Jeffreys v. Commc'ns Workers of Am., AFL-CIO*, 212 F.R.D. 320, 322 (E.D. Va. 2003).  And the common issue must be such that "determination of its

truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* The standard is a liberal one that cannot be defeated by the mere existence of some factual variances in individual grievances among class members. *Id.* at 322; *Mitchell-Tracey v. United Gen. Title Ins. Co.*, 237 F.R.D. 551, 557 (D. Md. 2006) (finding that factual differences among class members will not necessarily preclude certification "if the class members share the same legal theory").

Here, by definition, the Settlement Class Members share questions of law and fact. The Settlement Class Members allege that MeridianLink inaccurately included in a consumer report a notation that they were "deceased" when in fact they are alive. The practices at issue for these claims are identical across all class members, as is the fact that all Settlement Class Members are in fact alive. The theories of liability as to the Settlement Class Members therefore arise from the same practices and present basic questions of law and fact common to all members of the Settlement Class. *See* Fed. R. Civ. P. 23(a).

3. Typicality

In the typicality analysis, "[a] class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 146 (4th Cir. 2001). "Nevertheless, the class representatives and the class members need not have identical factual and legal claims in all respects. The proposed class satisfies the typicality requirement if the class representatives assert claims that fairly encompass those of the entire class, even if not identical." *Fisher v. Va. Elec. & Power Co.*, 217 F.R.D. 201, 212 (E.D. Va. 2003). "The typicality requirement mandates that Plaintiffs show (1) that their interests are squarely aligned with the interests of the class members and (2) that their claims arise from the same events and are premised on the same legal theories as the claims of the class members." *Jeffreys*, 212 F.R.D. at 322. Commonality and typicality tend to merge because both "serve as guideposts for

determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 n.5 (2011).

Plaintiffs' class claims arise from MeridianLink procedures for reporting consumers as "deceased." As discussed in the previous section, these are the same claims advanced on behalf of the Settlement Class Members, and Plaintiffs are members. Thus, in seeking to prove their claims, Plaintiffs will advance the claims of Settlement Class Members. This is the hallmark of typicality. *See Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2001) (citing Fed. R. Civ. P. 23(a)(3)).

4. Adequacy of Representation

"Finally, under Rule 23(a)(4), the class representatives must adequately represent the interests of the class members, and legal counsel must be competent to litigate for the interests of the class." *Jeffreys*, 212 F.R.D. at 323. "Basic due process requires that the named plaintiffs possess undivided loyalties to absent class members." *Fisher*, 217 F.R.D. at 212 (citing *Broussard v. Meineke Disc. Muffler Shops*, 155 F.3d 331, 338 (4th Cir. 1998)).

The adequacy of representation requirement is met here. Plaintiffs understand and have accepted the obligations of class representatives, has adequately represented the interests of the putative class, and has retained experienced counsel who have handled many consumer-protection class actions. Plaintiffs' counsel has handled several consumer-protection and complex class actions, typically as lead or co-lead counsel. *See Dreher v. Experian Info. Sols., Inc.*, No. 3:11-cv-00624-JAG, 2014 WL 2800766, at *2 (E.D. Va. June 19, 2014); *Clark v. Trans Union, LLC*, No. 3:15-cv-391, 2017 WL 814252, at *13 (E.D. Va. Mar. 1, 2017) (collecting cases and stating, "This Court has repeatedly found that [proposed Class Counsel] is qualified to conduct such

litigation. . . . This Court echoes the sentiments previously stated about [proposed Class Counsel] because they pertain here with equal vigor." (citations omitted)); *Burke v. Seterus, Inc.*, No. 3:16-cv-785, ECF No. 41, Fairness Hr'g Tr. at 9:19-22 (E.D. Va. Mar. 12, 2018) ("Experience of counsel on both sides in this case is extraordinary. Ms. Kelly and Ms. Nash and their colleagues are here in this court all the time with these kinds of cases and do a good job on them."); *Heath v. Trans Union*, No. 3:18-cv-720, ECF No. 61, Prelim. Approval Hr'g Tr. at 9:8-9 (E.D. Va. Aug. 6, 2019) (Kelly Guzzo's "reputation in this district, and I am sure in others, [is] sterling"); *Turner v. Zestfinance, Inc.*, No. 3:19-cv-293, ECF No. 95, Prelim. Approval Hr'g Tr. at 13:1-4, (E.D. Va. Feb. 24, 2020), ("[W]e have Ms. Kelly . . . here, who are well known to me as being experts in this field, but it looks like the other class counsel is like the all-star team of consumer litigation."); *In re Think Finance*, No. 17-33964, ECF No. 1432, Tr. of Proceedings at 40:18-21 (Bankr. N.D. Tex.) (the court "had two or three sets of law students that sat through this, and each time I told them that when you come into this hearing you'll see some of the best lawyers in America, and I still feel like that today"); *Galloway v. Williams*, No. 3:19-CV-470, 2020 WL 7482191, at *8 (E.D. Va. Dec. 18, 2020) (finding that class counsel, including the lawyers at Kelly Guzzo, PLC, "have extensive backgrounds in complex and class action litigation and consumer protection litigation"); *Gibbs v. TCV V, L.P.,* 3:19-cv-789, ECF No. 97, Fairness Hr'g Tr. at 139:10-17 (E.D. Va. Mar. 25, 2021) ("The representation by class counsel is certainly adequate. I don't want to belabor the issue at the expense of folks, one, getting tired of hearing me, but, two, also maybe feeling a little too good about themselves.  But it is the case that the track record here and the success of litigating complex cases, and specifically in tribal payday lenders, is, I think, as high as it gets in this country."); *see also* Declaration of Kristi Kelly ¶¶ 9-10 (attached as Ex. 2) ("Kelly Decl.");

Declaration of Michelle Drake ¶¶ 4-11 (attached as Ex. 3) ("Drake Decl."); Declaration of Dale Pittman ¶¶ 14-15 (attached as Ex. 4) ("Pittman Decl.").

Plaintiffs have no antagonistic or conflicting interests with the Settlement Class Members. Plaintiffs and the Settlement Class Members alike seek relief for MeridianLink's allegedly unlawful actions. Plaintiffs are members of the Settlement Class and have no conflicting interests with other Settlement Class Members. Plaintiffs also have been very active in this case, including participating in settlement efforts. (*See* Kelly Decl. ¶¶ 16.) As a result, the Settlement Class Members are adequately represented to meet Rule 23's requirements.

ii.      *The Settlement Class satisfies Rule 23(b)(2)*

If the requirements of Rule 23(a) are met, the proposed class must then fall into one of the categories set out in Rule 23(b) to warrant certification. *Berry*, 807 F.3d at 608. The Settlement Class is an injunctive-relief-only settlement class under Rule 23(b)(2), which applies when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief . . . is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2); *Berry*, 807 F.3d at 608-09 (citing *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 329 (4th Cir. 2006)). Simply, Rule 23(b)(2) certification is proper "if members of the proposed class would benefit from the injunctive relief." *Cuming v. S.C. Lottery Comm'n*, No. 3:05-cv-03608-MBS, 2008 WL 906705, at *6 (D.S.C. Mar. 31, 2008) (citing *Thorn*, 445 F.3d at 331). In addition, any request for monetary relief by the class must be "incidental" to the injunctive relief before certification under Rule 23(b)(2) is appropriate. *Berry*, 807 F.3d at 609. The Rule 23(b)(2) Settlement Class here satisfies both requirements.

Plaintiffs allege on behalf of the Rule 23(b)(2) Settlement Class that Defendants' practices and procedures failed to satisfy § 1681e(b)'s "reasonable procedures" requirement. Here, the Settlement Agreement treats all Rule 23(b)(2) Settlement Class Members alike in granting them

13

the substantial benefits of the changes to MeridianLink's practices. Injunctive relief is a powerful, efficient, and effective way of protecting broad interests like the accurate reporting and handling of consumer information, especially when, as here, out-of-pocket monetary losses are sometimes difficult to prove based on the violation of such interests. While MeridianLink maintains that it has always acted in compliance with the law, the fact that the Settlement modifies MeridianLink's conduct for the Settlement Class as a whole makes it appropriate for certification under Rule 23(b)(2). *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011) ("The key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" (citation omitted)). The injunctive relief will provide a direct benefit to the Settlement Class Members going forward because, through standard practices in the mortgage lending industry and MeridianLink's position as one of the largest sellers of the disputed tri-merge reports, class members are much less likely to be the subject of an inaccurate report in the future and to face the possibility of being denied mortgage credit due to MeridianLink's practices.

The Settlement also meets Rule 23(b)(2)'s second requirement that any request for monetary relief be merely "incidental" to the injunctive relief provided. Indeed, the Settlement does not provide monetary relief for Settlement Class Members. Moreover, like the members of the mandatory injunctive relief class in *Berry*, members of the Settlement Class here retain their ability to bring individual claims for actual damages, punitive damages, and attorneys' fees. *Berry*, 807 F.3d at 610 (quoting *Dukes*, 564 U.S. at 365). This retained right to bring further litigation "mak[es] class-wide representation possible and opt-out rights unnecessary." *Id.* at 612–13.

### c.     *The Settlement Satisfies the Requirements of Rule 23(e)(2)*

"Rule 23(e) of the Federal Rules of Civil Procedure obliges parties to seek approval from the district court before settling a class-action lawsuit."  *In re: Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Pracs. & Prod. Liab. Litig.*, 952 F.3d 471, 483 (4th Cir. 2020) (citing Fed. R. Civ. P. 23(e)).  When a court "reviews a proposed class-action settlement, it acts as a fiduciary for the class."  *1988 Tr. for Allen Child. Dated 8/8/88 v. Banner Life Ins. Co.*, 28 F.4th 513, 525 (4th Cir. 2022).  "In fulfilling this role, the district court must conclude that a proposed settlement is 'fair, reasonable, and adequate,'" which are the three requirements established by Rule 23(e)(2) of the Federal Rules of Civil Procedure.  *Id.* (citing Fed. R. Civ. P. 23(e)(2)).  "In determining whether a settlement is fair, reasonable, and adequate," Rule 23(e)(2) requires the court to consider:

> (A)     the class representatives and class counsel have adequately represented the class;
>
> (B)     the proposal was negotiated at arm's length;
>
> (C)     the relief provided for the class is adequate, taking into account:
>
> > (i)      the costs, risks, and delay of trial and appeal;
> >
> > (ii)     the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> >
> > (iii)    the terms of any proposed award of attorneys' fees, including timing of payments; and
> >
> > (iv)     any agreement required to be identified under Rule 23(e)(3);
>
> (D)     the proposal treats class members equitably relative to each other.

*Galloway v. Williams*, 2020 WL 7482191, at *4 (E.D. Va. 2020) (quoting Fed. R. Civ. P. 23(e)(2)). In making this assessment, district courts are provided with "considerable deference" because "the court 'is exposed to the litigants, and their strategies, position[s], and proofs, and is on the firing

line and can evaluate the action accordingly.'" *Lumber Liquidators*, 952 F.3d at 484 (quoting *Joel A. v. Giuliani*, 218 F.3d 132, 139 (2d Cir. 2000)).

i.      *Plaintiffs and Class Counsel Have Adequately Represented the Class.*

Rule 23(e)(2)'s first factor examines whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A).  This assessment is "redundant of the requirements of Rule 23(a)(4) and Rule 23(g), respectively." *In re Flint Water Cases*, 571 F. Supp. 3d 746, 780 (E.D. Mich. 2021) (quoting Albert Conte & Herbert Newberg, *Newberg on Class Actions* § 13:48 (5th ed. June 2021 update)).  Rule 23's adequacy requirements are met if: "(1) the named plaintiff has interests common with, and not antagonistic to, the Class'[s] interests; and (2) the plaintiff's attorney is qualified, experienced and generally able to conduct the litigation." *Gibbs v. Stinson*, 2021 WL 4812451, at *16 (E.D. Va. Oct. 14, 2021) (quoting *Milbourne v. JRK Residential Am., LLC*, 2014 WL 5529731, at *8 (E.D. Va. Oct. 31, 2014)).

This first factor is easily satisfied.  Plaintiffs' interests and those of Class Members are fully aligned as they were all subjected to the same deficient practices.  *See, e.g.*, *Stinson*, 2021 WL 4812451, at *16 (finding that the plaintiffs were adequate in a comparable case because they had "no interests antagonistic to the class's interest" and shared "identical interest of establishing Defendants' liability based on the same questions of law and fact").

Additionally, Class Counsel has been practicing in the field of consumer protection for more than 15 years, and they believe that this settlement stacks up very favorably when compared to other settlements over that time.  (*See* Kelly Decl. ¶ 17; Drake Decl. ¶ 12; Pittman Decl. ¶ 19.) Courts recognize that the opinion of experienced and informed counsel in favor of settlement should be afforded substantial consideration in determining whether a class settlement is fair and adequate.  *See*, *e.g.*, *In re MicroStrategy*, 148 F. Supp. 2d at 665.

Given the substantial relief afforded the proposed settlement—especially when contrasted against the risks associated with litigating this matter—it is fair and appropriate for approval. *See S.C. Nat'l Bank v. Stone*, 139 F.R.D. 335, 339 (D.S.C. 1991) (concluding fairness met where settlement discussions "were, at times, supervised by a magistrate judge and were hard fought and always adversarial," and those negotiations "were conducted by able counsel" with substantial experience).

### ii. Negotiations Were at Arm's Length and Involved a Respected Mediator.

The second factor examines whether the settlement "was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B); *see also Flint Water Cases*, 571 F. Supp. 3d at 780 (explaining that the second factor requires courts to "consider whether the negotiations were conducted at arm's length with no evidence of collusion or fraud"). "Courts presume the absence of fraud or collusion unless there is evidence to the contrary." *Id.* (quoting *UAW v. Gen. Motors, Corp.*, 2006 WL 891151, at *21 (E.D. Mich. Mar. 31, 2006)). Here, there is no evidence suggesting the presence of collusion or fraud between the parties.

To help confirm that negotiations were at arm's length, courts look at several other factors, including the presence of a mediator. As the leading class action treatise explains: "There appears to be no better evidence of [a truly adversarial bargaining process] than the presence of a third-party mediator." Conte & Newberg, *supra*, § 13:48; *see also Flint Water Cases*, 571 F. Supp. 3d at 780 ("highly experienced mediators" provide "ample protections in their roles"). Here, the parties participated in multiple rounds of mediation before the Honorable Mark R. Colombell, United States Magistrate Judge, to help reach the terms of their agreement. (*See* Kelly Decl. ¶ 15.) The involvement of Judge Colombell establishes that there was no collusion among the parties.

### iii. The Relief Provided to the Class is Adequate.

Rule 23(e)(2)(C) requires the Court to consider whether the relief is adequate, considering:

(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3).

Fed. R. Civ. P. 23(e)(2)(C).  These subfactors overlap with the factors that the Fourth Circuit has held are required to evaluate a class settlement's fairness, reasonableness, and adequacy.  *Lumber Liquidators*, 952 F.3d at 484 n.8 (citing *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 159 (4th Cir. 1991)).  An analysis of each factor shows that this settlement is fair, reasonable, and adequate.

The first Rule 23(e)(2)(C) sub-factor requires the Court to evaluate the settlement against the costs, risks, and delay of trial and appeal.  This factor strongly supports approval of the settlement.  While Class Counsel strongly believes in the strength of this case, they also acknowledge that there are substantial risks associated with continued litigation.  Most notably, from the start of litigation, MeridianLink has been adamant that it has defenses to Plaintiff's claims, including that it is not even subject to the FCRA because it is not, in its view, a "credit reporting agency" and does not furnish "consumer reports."  MeridianLink also argues that it engaged in reasonable practices to ensure the accuracy of the disputed reports, an inherently factual dispute for a jury to decide.  Were MeridianLink to dig in on its defenses, this case would involve substantial briefing at the class certification and summary judgment stages, as well as a trial and appeals.

Further, it is doubtful whether Plaintiffs could have forced and obtained injunctive relief under the FCRA without a settlement. As the Fourth Circuit observed in *Berry*:

We may assume, as did the district court, that the FCRA, which does not provide expressly for a private right of action for injunctive relief, does not permit consumers to seek injunctive remedies. But like the district court, we think that is beside the point: "[I]n the settlement context, 'it is the parties' agreement that serves as the source of the court's authority to enter any judgment at all.'"

807 F.3d 600, 610 (4th Cir. 2015) (citations omitted).  The settlement avoids this significant cost, risk, and time by providing significant settlement benefits to the Class Members now.

Rule 23(e)(2)(C)'s second sub-factor requires the Court to evaluate the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims.  Here, Class Members will receive significant settlement benefits automatically, without needing to establish any harm.  This is important because "[t]he use of objective criteria to determine settlement distribution is a hallmark of fairness."  *Flint Water Cases*, 571 F. Supp. 3d at 781.  Because the injunctive relief applies across the board and requires no action by Class Members, while preserving Members' rights to bring claims for individual damages, this factor weighs strongly in favor of approving the settlement.

Rule 23(e)(2)(C)'s third sub-factor requires the Court to evaluate the request for attorneys' fees, including the timing of the request.  The focus of this analysis is whether there are signs that "counsel sold out the class's claims at a low value in return for [a] high fee."  Conte & Newberg, *supra*, § 13:54.  There are no such indications here.  As outlined above, the Settlement Agreement obtains broad changes to MeridianLink's practices that would otherwise not be obtainable through FCRA litigation alone.  And although the Settlement does not include cash payments, Settlement Class Members may still seek full damages, including punitive damages and their attorney's fees, for the harm caused by MeridianLink's conduct.  The Settlement thus preserves the rights of Settlement Class Members who were directly harmed by MeridianLink while obtaining course-correcting changes to the practices that were the cause of that harm in the first place.

It is also important to note that the attorneys' fee component of the settlement was only discussed after all other material settlement terms had been finalized.  And the attorneys' fees were also negotiated under the supervision of Judge Colombell, who is experienced enough to notice if

Class Counsel were compromising the class members' claims for their own benefit. *Flint Water Cases*, 571 F. Supp. 3d at 782. As to the timing of the attorney fee award request, "courts are to consider this to prevent situations in which the request for attorney fees is unknown and could upset the compensation to claimants at the time of final approval." *Id.* There is no such concern here, as the injunctive relief is unaffected by the possible fees award.

Finally, under Rule 23(e)(3), Plaintiffs each reached separate confidential settlements for the monetary harm to them individually only after the parties had agreed to the material terms of the class settlement.

### iv. *The Settlement Treats Class Members Equitably Related to Each Other.*

The final factor under Rule 23(e)(2) requires a court to consider whether "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D) (emphasis added). This factor considers whether class members have been treated in a fair and impartial manner, but "[t]here is no requirement that all class members in a settlement be treated equally." *Swinton v. SquareTrade, Inc.*, 454 F. Supp. 3d 848, 876 (S.D. Iowa 2020) (emphasis in original) (citation omitted). And when considering this factor, a court "must balance the claims of those with potentially substantial damages with those with potentially minimal or insignificant damages." *Id.* (citation omitted).

The settlement here achieves this balance. As noted above, the Settlement Agreement provides for company-wide changes to MeridianLink's conduct that will significantly reduce the likelihood of similar inaccurate reporting in the future, while preserving the right of Class Members to seek damages if they have been harmed by MeridianLink's prior reporting practices. Thus, those with substantial or insignificant damages will still be able to pursue their claims, while using the FCRA's fee-shifting provisions to obtain qualified counsel to represent them. At the same time, those with substantial or insignificant damages will still receive the direct benefits of

the injunctive relief that will cause significant changes to the MeridianLink's business practices going forward.

### d.     *The Proposed Notice Plan Satisfies Rule 23*

Neither Rule 23 nor the case law requires individualized, mailed notice for a Rule 23(b)(2) settlement class (with potentially many tens of millions of class members receiving injunctive relief), where class members do not have the opportunity to opt out of the settlement and are not required to take any affirmative action to receive the benefits of the settlement. Federal Rule of Civil Procedure 23(c)(2)(A) is explicit that even a litigated Rule 23(b)(2) class does not require any notice. Fed. R. Civ. P. 23(c)(2)(A) ("For any class certified under Rule 23(b)(l) or (2), the court *may* direct appropriate notice to the class." (emphasis added)). Unlike class actions certified under Rule 23(b)(3), which require individual notice to class members and the opportunity to opt out of the settlement, class actions certified under Rule 23(b)(2) ordinarily do not require individual notice to class members because there is greater cohesion of interests in a (b)(2) class, as individual damages claims are not at stake. *See Ass'n for Disabled Ams., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457,466 (S.D. Fla. 2002) ("Notice (and exclusion opportunity) is not required in Rule 23(b)(2) actions."); 7B Charles Alan Wright et al., Federal Practice and Procedure § 1793 (3d ed. 2006) (stating that while Rule 23(b)(3) classes require mandatory notice, notice is not as important for Rule 23(b)(2) classes "because the class typically will be more cohesive"); Fed. R. Civ. P. 23 advisory committee's note (2003 Amendments) (explaining that "[t]he authority to direct notice to class members in a (b)(1) or (b)(2) class should be exercised with care" because there is no right to request exclusion and because of the potentially "crippl[ing]" cost of providing notice).

Anticipating that notice is appropriate here, the Parties have nonetheless developed a comprehensive notice program to notify the Rule 23(b)(2) Settlement Class of the proposed settlement.  Use of online publication of notice, as set forth in the Parties' proposed notice program,

meets the reasonable notice requirement of Rule 23(e) when providing notice to a large, nationwide Rule 23(b)(2) class. *In re NASDAQ MarketMakers Antitrust Litig.*, 169 F.R.D. 493, 532 (S.D.N.Y. 1996) ("Notice under Rule 23(b)(2) is flexible, and may consist entirely of published notice in appropriate circumstances."). The Parties modeled the Notice Plan here on the plans for Rule 23(b)(2) notice plans in other (b)(2) class cases approved by courts in this District. *See, e.g.*, *Stewart v. LexisNexis Risk Data Retrieval Servs., LLC*, No. 3:20-cv-00903-JAG, ECF No. 70 (E.D. Va. Feb. 25, 2022) (approving notice to Rule 23(b)(2) class that included settlement website and online advertising); *Clark v. Trans Union LLC*, No. 3:15-cv-00391-MHL, ECF No. 248 (E.D. Va. Mar. 23, 2018) (approving notice to Rule 23(b)(2) class that included settlement website, publication of notice, and a toll-free number). As in those cases, the plan here is intended to reach the maximum number of possible Settlement Class Members in the two most spoken languages in the United States, and the parties will work with the Settlement Administrator to determine the most effective websites to use for advertising the Settlement Website to potential Settlement Class Members. Kelly Decl. ¶ 18. Experts have estimated that similar programs have reached over 70 percent of settlement class members in other cases, and the same result is expected here. *Id.* Such a result more than satisfies the requirements of due process, especially for a Rule 23(b)(2) class. *See, e.g.*, *Edwards v. Nat'l Milk Producers Fed'n*, No. 11- CV-04766JSW, 2017 WL 3623734, at *4 (N.D. Cal. June 26, 2017) (noting that "notice plans estimated to reach a minimum of 70 percent are constitutional and comply with Rule 23" and approving notice plan that reached 75% of settlement class); *McCabe v. Six Continents Hotels, Inc.*, No. 12-CV04818 NC, 2015 WL 3990915, at *11 (N.D. Cal. June 30, 2015) (approving notice program with 70% reach).

## III. CONCLUSION

The proposed class action settlement is an excellent result considering the circumstances of the litigation and strength of Plaintiffs' case. The terms of the proposed class action settlement,

as well as the circumstances of negotiations and its elimination of further costs caused by litigating this case through trial and appeal, satisfy the structures for preliminary approval.

For these reasons, Plaintiffs request that the Court issued the proposed Preliminary Approval Order.

Respectfully submitted,
**PLAINTIFFS**

_____/s/ Kristi C. Kelly_____
Kristi C. Kelly, VSB #72791
Andrew J. Guzzo, VSB #82170
Casey S. Nash, VSB #84261
J. Patrick McNichol, VSB #92699
Matthew G. Rosendahl, VSB #93738
KELLY GUZZO, PLC
3925 Chain Bridge, Suite 202
Fairfax, VA 22030
Telephone: (703) 424-7572
Facsimile: (703) 591-0167
Email: kkelly@kellyguzzo.com
Email: aguzzo@kellyguzzo.com
Email: casey@kellyguzzo.com
Email: pat@kellyguzzo.com
Email: matt@kellyguzzo.com

Dale W. Pittman, VSB #15673
THE LAW OFFICE OF DALE W. PITTMAN, PC
The Eliza Spotswood House
112-A West Tabb Street
Petersburg, Virginia 23803
Telephone: (804) 861-6000
Facsimile: (804) 861-3368
Email: dale@pittmanlawoffice.com

Eleanor Michelle Drake (_pro hac vice_)
Joseph C. Hashmall (_pro hac vice_)
1229 Tyler Street NE, Suite 205
Minneapolis, MN 55413
Telephone: (612) 594-5999
Facsimile: (612) 584-4470
Email: emdrake@bm.net

Email:  jhashmall@bm.net

*Counsel for Plaintiff*